UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SENETRA CARTER, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 4:07-cv-0557 |
| § | |
| NATIONWIDE MUTUAL INSURANCE § | |
| COMPANY, NATIONWIDE HEALTH § | |
| CARE PLAN, AND GATES MCDONALD § | |
| & COMPANY. § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiff's Motion to Reconsider and Set Aside Summary Judgment. After considering the arguments made in briefing and the relevant law, the Court finds that Plaintiff's Motion, Doc. No. 45, should be **DENIED**.

### I. BACKGROUND

As the Court discussed in its prior Order, Plaintiff, a former employee of Nationwide Mutual Insurance Company, claims that she is entitled to long term disability benefits (LTD Benefits) under the Nationwide Mutual Insurance Company Health Care Plan. In the alternative, Plaintiff argues that her claims should be remanded for a full and fair review as required by 29 C.F.R. § 2560.503-1. The Court granted Defendants' Motion for Summary Judgment, finding that Defendants substantially complied with the procedural requirements of Section 1133 of ERISA in the processing of Ms. Carter's claim. The Court also held that Defendant's determination that Ms. Carter was not eligible for disability benefits was not arbitrary and did not constitute an abuse of discretion.

### II. RECONSIDERATION STANDARD

A motion for reconsideration may be made under either Federal Rule of Civil Procedure 59(e) or 60(b). *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n. 1 (5th Cir. 2004). Such a motion must "clearly establish either a manifest error of law or fact or must present newly discovered evidence. These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). In considering a motion for reconsideration, a court "must strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir.1993).

## III. ANALYSIS

### A. Full and Fair Review

Plaintiff argues that the Court's decision that Ms. Carter was afforded a full and fair review of Defendants' denial decision was clearly erroneous. Plaintiff appears to agree that a full administrative record was provided to her and the court after the final denial.[1] Plaintiff points to no document in the current administrative record that was not provided to her previously that would have affected her ability to make her case before the Disability Assessment Committee (DAC). Furthermore, Plaintiff was given the opportunity to supplement the record with additional doctors' assessments and medical records before the DAC made its determination. Particularly given the Fifth Circuit's substantial compliance rule, *see, e.g., Lacy v. Fulbright & Jaworski*, 405 F.3d 254, 256-57 (5th Cir. 2005), the Court does not find that its prior decision was clearly erroneous. This finding should in no way lead Defendants to believe,

---

[1] In prior briefing, Plaintiff complained that certain internal notes appear to be missing from the record. The final denial determination by the Disability Assessment Committee (DAC) was based on records that are part of the administrative record before the Court. Plaintiff has not specified why any internal notes absent from the record made it impossible for her to "scrutinize the record and engage in sufficient dialogue to obtain reversal of an erroneous denial." (Pl.'s Mot. Reconsider, 4.)

however, that they need not provide a full and complete record to claimants during the review process. Failure to do so under different circumstances could possibly lead to reversal of a disability determination.

### B.     Abuse of Discretion

Plaintiff also argues that the Court clearly erred in finding that the DAC's determination did not constitute an abuse of discretion.

The Court must first clarify the standard of review based on the Supreme Court's recent decision in *Metropolitan Life Insurance Co. v. Glenn*. When considering whether Defendants' decision was arbitrary or constituted an abuse of discretion, the Court applied the Fifth Circuit's "sliding scale" standard of review to the claim because the defendant was both the sponsor and administrator of the Plan. (*See* Doc. No. 43, 11-12.) Subsequent to the Court's Order, the Supreme Court clarified the standard for evaluating conflicts of interest under ERISA. *Metropolitan Life Insurance Co. v. Glenn*, 128 S. Ct. 2343 (2008). The *Glenn* Court held that courts "should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits." *Id.* at 2346. "[T]he significance of the factor will depend upon the circumstances of the particular case." *Id.*; *see also Crowell v. Shell Oil Co.*, --- F.3d ----, 2008 WL 3485331, at *11 (5th Cir. Aug. 14, 2008) (citing *Glenn*, 128 S. Ct. at 2348); *Dunn v. GE Group Life Assur. Co.* No. 07-10739, 2008 WL 3842929, at *3-4 (5th Cir. Aug. 18, 2008) (unpublished) ("In *Glenn*, the Supreme Court confirmed that 'the fact that a plan administrator both evaluates claims for benefits and pays benefits claims' creates a conflict of interest that must be weighed as a factor in determining whether there was an abuse of discretion." (citing *Glenn*, 128 S. Ct. at 2348). For purposes of this Motion, therefore, the Court

will weigh the alleged conflict as a factor in determining whether there was an abuse of discretion.

Plaintiff argues that the Court erred in its assessment of and reliance on Dr. Warner's determination that Plaintiff was not disabled.[2] Even if Dr. Warner's finding that Plaintiff suffers from "a condition of undifferentiated connective tissue disease" should be read as confirmation of Dr. Hernandez's diagnosis of Lupus,[3] Dr. Warner still found that Plaintiff's symptoms did not render her disabled under the Plan. The Court observed that Dr. Warner had expressed "skepticism" about Ms. Carter's subjective complaints of pain in her first report. Dr. Warner's view of Plaintiff's subjective complaints of pain did not clearly change in her second report. Indeed, in the second report, written after she had the opportunity to review Dr. Hernandez's diagnosis and records, Dr. Warner stated that "[r]eviewing the additional information does not support a change in my statements as in my original report regarding her total disability," and added that the additional medical records did not alter her conclusion that Ms. Carter was not totally disabled from work. This suggests that Dr. Warner did not, in fact, reconsider her prior views regarding Plaintiff's complaints of pain.[4] Furthermore, Dr. Warner's conclusion that Plaintiff "is not able to work full-time without treatment and accommodation for her arthritis" does not necessarily render the Court's finding clearly erroneous. Plaintiff has not argued the Plan language cannot support a reading that a claimant is not disabled if she can engage in substantial gainful employment with reasonable accommodations. *See, e.g., Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 231 (5th Cir. 2004) (upholding Plan determination

---

[2] Dr. Warner is an Independent Medical Examiner chosen by the Plan to examine Plaintiff.
[3] Plaintiff has not provided the Court with evidence that "undifferentiated connective tissue disease" and "Lupus" are equivalent.
[4] Plaintiff argues that the evidence of her physical complaints and limitations are undisputed. It is true that prior independent medical examiners did not question Plaintiff's subjective complaints of pain. These other doctors were not rheumatologists, however, and were primarily evaluating Plaintiff's thyroid condition.

that claimant was not disabled if she could "perform all the substantial and important aspects of her job, *with reasonable accommodation.*" (emphasis added)).

Plaintiff also argues that the Court erred in upholding the DAC's finding that she was not disabled based on her thyroid condition. Dr. Marks, an Independent Medical Examiner and endocrinologist, did note that "if" Plaintiff's hyperthyrodisim were treated appropriately and "if" she eventually became euthyroid, she would be able to return to work and "regain her active lifestyle." Dr. Marks also stressed that Ms. Carter had not been compliant with her medication. Although Dr. Marks clearly qualified his conclusion that Ms. Carter could return to work, the DAC did not rely on Dr. Marks' evaluation in finding that Plaintiff was not disabled based on her thyroid condition. Instead, the DAC based its determination on Dr. Shiver's finding that Ms. Carter's thyroid condition did not render her totally disabled and Dr. Shiver's observation that Ms. Carter would be "best suited for work within the sedentary to light category of work and should avoid any type of exertional activities."[5]

Plaintiff's argument that her work demands exceeded the sedentary or light work job requirements is unavailing. First of all, Plaintiff has made no attempt to explain what the standard is for sedentary or light work or why her job duties exceeded this standard. More importantly, however, the Plan definition of disability does not focus on Plaintiff's actual job duties, but instead states that a claimant will be found disabled if she is unable to engage in substantial gainful employment for which the claimant is or may become qualified.[6]

The Court's review of a Plan determination under ERISA is very limited. The Court "need only assure that the administrator's decision fall somewhere on a continuum of reasonableness-even if on the low end." *Vega v. National Life Ins. Services, Inc.*, 188 F.3d 287,

---

[5] Dr. Shiver's examination of Plaintiff took place approximately nine months after Dr. Marks' exam.
[6] This is true under all relevant versions of the Plan definition of disability. (*See* Doc. No. 43, 12 n. 8.)

298 (5th Cir. 1999). Furthermore, a Plan is "allowed to adopt one of two competing medical views."[7] *Gothard v. Metro. Life Ins. Co.*, 491 F.3d 246, 249 (5th Cir. 2007); *see also Barkley v. Life Ins. Co. of North America*, Slip Copy, No. 3:07-CV-1498-M, 2008 WL 2901636, at *5 (N.D. Tex. July 24, 2008). Of particular relevance in this case is the fact that, under ERISA, the Plan is not required to give any special deference to a Plaintiff's treating physician. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003); *Gothard*, 491 F.3d at 249.

This may be a case in which the administrator's decision does, in fact, fall on the low end of the continuum of reasonableness. Nonetheless, even taking into account the dual-role conflict, the Court does not find that its prior decision to uphold the Plan's determination was clearly erroneous. The Plan chose to adopt Dr. Warner's medical view that Plaintiff was not disabled over Dr. Hernandez's view that she was disabled based on a rheumatological condition. It also chose to rely on Dr. Shiver's assessment in determining that Plaintiff was not disabled by her thyroid condition. The DAC provided scant, but sufficient, explanation of the basis for its decision. The Court does not find that the DAC's decision was an abuse of discretion.

## IV.   CONCLUSION

Plaintiff's Motion to Reconsider, Doc. No. 45 is, therefore, **DENIED**.

**IT IS SO ORDERED**.

**SIGNED** this 4th day of September, 2008.

---

[7] The Court is concerned that a Plan might require a claimant to submit to multiple independent medial examinations until it finds a doctor willing to declare that the claimant is not, in fact, disabled. The record does not indicate that Defendants used such a tactic in this case. Defendants did seek the advice of multiple independent medical examiners. Dr. Jamal, the first to examine Ms. Carter, could not answer questions about her disability because he did not have the necessary records. Dr. Marks then reviewed the records, but did not reach a definitive decision. After Dr. Shiver finally reached a definitive conclusion as to Plaintiff's disability based on her thyroid condition, the Plan only asked her to submit to an additional examination by a rheumatologist, in order to evaluate any potential disability that might have arisen from a condition unrelated to her thyroid condition. Although Plaintiff's own doctor, Dr. Hernandez, had, by that point, found her disabled based on a diagnosis of Lupus, it was not clearly unreasonable for the Plan to ask Dr. Warner, an independent examiner, to evaluate Plaintiff's alleged rheumatological condition and Dr. Hernandez's findings.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE